488

## HARRIS v. LAMBROS.
### No. 5272.

Court of Appeals of District of Columbia.
Argued Jan. 6, 1932.
Decided Feb. 1, 1932.

Charles W. Arth and Leonard J. Ganse, both of Washington, D. C., for plaintiff in error.

Guy Mason, of Washington, D. C., for defendant in error.

Before MARTIN Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This writ of error involves an interpretation of a section of the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950), which Congress, by Act of May 17, 1928, c. 612, 45 Stat. 600 (33 USCA § 901 note), has made applicable to certain employments in the District of Columbia.

The facts are agreed. Condensed, they show that defendant in error, whom we shall call defendant, was the proprietor of several restaurants and cafeterias in Washington city. Under the provisions of the act, he was required in the operation of his restaurants to carry workmen's compensation insurance. Plaintiff in error, whom we shall call plaintiff, provided the insurance. The policy premium which defendant was required to pay was based upon the entire remuneration earned during the policy period by all employees of insured. But it was impossible to determine the actual amount of such remuneration at the time the policy was issued. It was therefore agreed that insured should pay an estimated advance premium and the balance, if any, at the end of the policy period when the exact amount of remuneration paid could be ascertained. Defendant paid the advance premium, and at the end of the period an audit was made, the accuracy of which is not disputed. The controversy arises over the question whether in determining total remuneration there should be included the value of meals furnished by defendant to his employees, which it is stipulated amounts to $24 per month per employee.

The statement of facts shows the defendant employed 56 persons as chefs, bus boys, dishwashers, waitresses, waiters, and cashiers. All were employed on a straight weekly wage basis, and there was no agreement as to meals or gratuities, and no food was purchased by defendant for the purpose of feeding his employees, but in the conduct of his lunch rooms and cafeterias it was the custom of employees at meal times to eat what they desired of the "left-overs," and there was always sufficient coffee, tea, and milk which they could and did consume within reasonable limits.

Turning to the provisions of the act, we find (subsection 13, § 2 [33 USCA § 902, subsec. 13]) that Congress has defined the meaning of the word "wages" as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of injury, including the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer." Turning to the policy, we find that the defendant agreed to pay a premium based on "the entire remuneration earned during the policy period by all employees." We have, therefore, to determine whether terms "wages" and "entire remuneration" should be held to include the value of food

regularly furnished by an employer to his employee.

Inasmuch as all compensation acts, including the one in question, are grounded upon the fundamental idea that the measure of indemnity paid to the employee in the event of injury is based on the amount of his then earnings, it is altogether reasonable that the premium paid to the insurer should likewise be based on the same conditions. It is therefore essential that the meaning of the word "wages" should be construed alike in ascertaining the premium and in fixing the indemnity. We think it perfectly clear that Congress meant, with relation to the indemnity, that the wage base of compensation should be the real wage earned and not alone that part which is expressed in terms of money. Baltimore & Phila. S. B. Co. v. Norton (D. C.) 40 F.(2d) 530, 532. Indeed the plain import of the words used in defining the term would make any other conclusion impossible. And the reason is obvious. Congress, of course, had in view conditions of general knowledge. For instance, few men who travel by railroad in Pullman cars have the fortitude or hardihood to avoid the porter's equity or the inexorable and certain demand of the redcap who carries the passenger's baggage through the station from or to the train, and this because it is well understood the wages paid such employees are nominal and the gratuity their means of livelihood. The same is true of waiters in hotels and restaurants and the attendant who receives and delivers the patron's hat or coat at the entrances. In these, as in other like cases, if in the event of injury for which compulsory compensation is provided the basis were the actual money wage, the beneficent purposes of the act would be wholly ineffective. To provide against this and to avoid contentions as to its scope and meaning, Congress defined the word "wages," wisely, we think, to include all earnings embraced in the contingencies we have suggested.

The facts as shown in this case are, it is true, somewhat different from those in the cases we have used by way of illustration, for here it is agreed defendant's employees were paid on a straight weekly basis without any express agreement they would be furnished meals, but, though there was no express agreement, there was admittedly a custom which had all the force and effect of an agreement, and it is not too much to say that the refusal of defendant to permit his employees to feed themselves from the "leftovers" or to use his coffee, tea, and milk within reasonable bounds, would have evoked as much surprise and protest as the unthinkable refusal of the ordinary housewife to extend the same privilege to domestic servants in her employ.

The silence, therefore, of the employer in engaging his help, with relation to the right to be fed at his cost, does not, in our opinion, alter the situation. It is the fact which controls, and here we have a case in which employees, by reason of the nature of their employment, are relieved of the burden of providing food for themselves, and the money value of that benefit is fixed by stipulation so that we are not left to speculation as to it. For the period in which the policy was in operation, defendant's employees received their money compensation and their board, and the two together embraced their wages as defined by the statute, and embraced likewise the "remuneration" on which the premium was calculated within the meaning of the contract, and the reason for this is plain and simple, since, as we have seen, the whole purpose of the act is to provide indemnity to an injured employee based upon the wage loss sustained by him as a result of the injury, and to an employee of this defendant the loss in such case would not be his wages alone, but his wages and his food, since each was a benefit which he enjoyed while employed and is deprived of when injured. In that view, the exclusion of either in determining his indemnity would be violative of the purpose of the act, and, since that is true, it must follow, we think, that the premium which is predicated upon the obligation to discharge the indemnity must likewise be calculated and paid on the same basis.

Reversed, with costs, and remanded for further proceedings in accordance with this decision.

Reversed and remanded.